# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES WALKER,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 1:13-cv-01669-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 12, 16, 17) |

## I.

## INTRODUCTION

Plaintiff James Walker ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for supplemental social security income pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from diabetes, obesity, and borderline intellectual functioning. For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for supplemental social security income on November 17, 2010. (AR 49.) Plaintiff's application was initially denied on March 8, 2011, and

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 7, 8.)

denied upon reconsideration on August 12, 2011.  (AR 89-93, 99-103.)  Plaintiff requested and received a hearing before Administrative Law Judge Christopher Larsen ("the ALJ").  Plaintiff appeared for a hearing on June 18, 2012.  (AR 32-48.)  On June 28, 2012, the ALJ found that Plaintiff was not disabled.  (AR 9-21.)  The Appeals Council denied Plaintiff's request for review on August 20, 2013.  (AR 1-3.)

### A.     Hearing Testimony

When Plaintiff arrived at the June 18, 2012 hearing his attorney was not present.  (AR 34.)  The ALJ contacted counsel's office and was told that Plaintiff had been informed that counsel had withdrawn from the case.  (AR 34.)  The ALJ explained Plaintiff's options and inquired whether Plaintiff wished to postpone the hearing to obtain representation.  (AR 34-35.)  Plaintiff decided to testify at the hearing without the assistance of counsel.  (AR 35.)

Plaintiff was born on April 2, 1965, and was 47 years old on the date of the hearing.  (AR 37.)  Plaintiff started, but did not finish the eleventh grade.  (AR 36.)  Plaintiff has worked as roofer, laying sod for highway landscaping, and pulling parts and dismantling at a wrecking yard, (AR 37-40).  Plaintiff also worked at a radiator repair shop, in chicken packaging, and as a janitor.  (AR 46.)

Plaintiff is mainly unable to work due to pain in his feet from his diabetes.  (AR 40.)  Plaintiff is able to walk for about 45 minutes and then he feels like there is something in the middle of his foot and both his feet go numb.  (AR 41.)  When Plaintiff tells his doctors about his feet they tell him his feet are alright and will not check it.  (AR 41.)  Plaintiff had some testing done and was told he has nerve damage.  (AR 41.)  Plaintiff would be able to work if he did not have the problems with his feet.  (AR 42.)

On a typical day, Plaintiff takes a walk or rides his bike.  (AR 42.)  Plaintiff is living with a friend and tries to wash dishes, vacuum, sweep, and cut the yard.  (AR 43.)  It takes him a long time, but he is able to get it done.  (AR 43.)  Plaintiff can lift 30 to 35 pounds.  (AR 43.)  Plaintiff can be on his feet for an hour and then he will start feeling pain all the way up his thigh.  (AR 43-44.)  Plaintiff cannot sit for more than 20 to 30 minutes or he will start to stiffen up.  (AR 44.)

A vocational expert ("VE"), Carly Coughlin, testified at the hearing. (AR 45-48.) The VE testified that Plaintiff's prior work experience is roofer, Dictionary of Occupational Title ("DOT") 866.381-010, medium, SVP 7; landscaper, DOT 408.687-014, heavy, SVP 2; parts clerk, DOT 222.367-042, heavy, SVP 3; radiator repair DOT 620.381-010, medium, SVP 6; janitor, DOT 381.167-018, medium, SVP 2; and hand packager, DOT 920.587-018, medium, SVP 2. (AR 45.)

The ALJ presented a hypothetical of an individual with Plaintiff's age, education, and work experience who can perform medium physical exertion, but is limited to simple repetitive tasks. (AR 47.) The VE opined that this individual would be able to work as a hand packager, 676,000 jobs nationally and 93,000 in California; and a janitor, 2 million jobs nationally, and 200,000 in California. (AR 47.) This individual would also be able to work as a laundry laborer, DOT 361.687-018, medium, SVP 2, with 395,000 jobs nationally and 40,000 in the state; golf range attendant, DOT 341.683-010, SVP 2, 257,000 jobs nationally and 40,000 in the state; and kitchen helper, DOT 318.687-010, SVP 2, medium, with 500,000 jobs nationally, and 66,000 in the state. (AR 47.)

The ALJ presented a second hypothetical of an individual of Plaintiff's age, education, and work experience, who can lift and carry 20 pounds occasionally and 10 pounds frequently; can stand and walk 2 to 3 hours in an 8 hour day and can sit only 2 to 3 hours in an 8 hour day. (AR 48.) The VE opined that there would be no work which this individual could perform. (AR 48.)

**B.    ALJ Findings**

Plaintiff has not engaged in substantial gainful activity since November 17, 2010. (AR 14.) Plaintiff has the following severe impairments: diabetes, obesity, and borderline intellectual functioning. (AR 14.) Plaintiff has no impairment or combination of impairments that meet or medical equal the severity of one of the listed impairments. (AR 14.) Plaintiff has the residual functional capacity to lift and carry 50 pounds occasionally and 25 pounds frequently; stand and walk up to 6 hours in an 8 hour day, and sit up to 6 hours in an 8 hour day, but he can only perform simple, repetitive tasks. (AR 16.)

1  Plaintiff can perform past relevant work as a hand packer and other jobs in the national
2  economy.  (AR 19.)  Plaintiff has not been under a period of disability as defined in the Social
3  Security Act, since the date he applied for supplemental security income.  (AR 21.)

## III.

## LEGAL STANDARD

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means more than a scintilla, but less than a preponderance.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006).  However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.")

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff contends that the ALJ erred by failing to include all the limitations of Dr. Ying[2]

---

[2] Plaintiff refers to the agency physician as Dr. Yang, however, the record demonstrates that the form was completed by Dr. Karen Ying.  (AR 60.)

1 in his hypothetical to the VE and failing to provide clear and convincing reasons to reject
2 Plaintiff testimony.  (Opening Brief, ECF No. 12.)

### A. Hypothetical Presented to VE

Plaintiff contends that the hypothetical presented to the VE did not include Dr. Ying's finding that Plaintiff was moderately limited in many areas and markedly limited in his ability to carry out detailed instructions.  (ECF No. 12 at 5.)  Further, Dr. Ying opined that Plaintiff has decreased motivation for socialization, but should be able to interact superficially for non-public jobs.  (Id.)

Defendant counters that the ALJ did account for Dr. Ying's finding that Plaintiff was markedly limited in his ability to carry out detailed instructions by limiting Plaintiff to only simple repetitive tasks which precluded Plaintiff from work involving detailed instructions.  (Def.'s Cross Mot. for Summary Judgment 6, ECF No. 16.)  Defendant also argues that Dr. Ying's finding that Plaintiff had the ability to interact with co-workers, supervisors, and interaction with the public properly translated Plaintiff's functional limitations into a functional capacity opinion which was presented to the VE at the hearing.  (Id.)

Plaintiff replies that the residual functional capacity is under inclusive and the ALJ erred for failing to provide any reason for rejecting certain of Dr. Ying's opinions.  (Plaintiff's Reply 4, ECF No. 17.)

"In order for the testimony of a VE to be considered reliable, the hypothetical posed must include 'all of the claimant's functional limitations, both physical and mental' supported by the record."  Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002).

Dr. Ying, a state agency physician, completed a disability determination explanation on March 2, 2011.  (AR 49-60.)  Dr. Ying prepared a psychiatric review technique and found that Plaintiff had mild restriction of activities of daily living, and moderate difficulties in maintaining social functioning and maintaining concentration, persistence or pace.  (AR 54.)  Dr. Ying also completed a residual functional capacity assessment.  Dr. Ying found that Plaintiff was not significantly limited in his ability to remember locations and work-like procedures and ability to understand and remember very short and simple instruction.  (AR 56.)  Plaintiff was moderately

limited in his ability to understand and remember detailed instructions. (AR 56.) Dr. Ying stated that Plaintiff has decreased memory, but can follow simple directions and has sustained concentration and persistence limitations. (AR 56.)

Dr. Ying found Plaintiff was not significantly limited in his ability to carry out very short and simple instructions, ability to work in coordination or in proximity to others without being distracted by them, and ability to make simple work-related decisions. (AR 56-57.) Plaintiff was moderately limited in his ability to maintain attention and concentration for extended periods; ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; ability to sustain an ordinary routine without special supervision; and ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (AR 56-57.) Dr. Ying further clarified that Plaintiff indicates that he feels tired and like laying down most days and can have moderate limitations in motivation to sustain concentration, persistence, and pace. (AR 57.) However, Plaintiff should be able to sustain concentration, persistence, and pace for simple tasks. (AR 57.) Plaintiff was found to be markedly limited in his ability to carry out detailed instructions. (AR 56.)

Dr. Ying found that Plaintiff was not significantly limited in social interaction except that he was moderately limited in his ability to interact appropriately with the general public and ability to accept instructions and respond appropriately to criticism from supervisors. (AR 58.) Dr. Ying stated that Plaintiff had decreased motivation for socialization, but should be able to interact superficially for non-public jobs. (AR 57.)

Dr. Ying found that Plaintiff was not significantly limited in his ability to be aware of normal hazards and take appropriate precautions, and ability to travel in unfamiliar places or use public transportation. (AR 57.) Plaintiff was moderately limited in his ability to respond appropriately to changes in the work setting; ability to set realistic goals or make plans independently of others; and had moderate limitations in his motivation for change, but should be able to make simple adaptions. (AR 57.)

Dr. Ying opined that Plaintiff had adequate cognitive ability to perform 1 and 2 step

1 tasks; was able to sustain concentration for 2 hour increments and 40 hour work week; was able
2 to interact with co-workers, supervisors, and have interaction with the public; and was capable of
3 adapting to routine changes in the work environment.  (AR 58.)

4       While Plaintiff argues that the ALJ failed to include Dr. Ying's finding that he was
5 markedly limited in his ability to carry out detailed instructions, the hypothetical presented to the
6 VE limited the individual to simple repetitive tasks.  This takes into consideration his marked
7 limitation to carry out detailed instructions and is consistent with Dr. Ying's finding that Plaintiff
8 had adequate cognitive ability to perform 1 and 2 step tasks.

9       Plaintiff is correct that the ALJ is required to discuss significant probative evidence,
10 Vincent v. Heckler, 739 F.2d 1393, 1394 (9th Cir. 1984), however this does not require the ALJ
11 to include every finding made by the physician in the hypothetical presented to the ALJ.  Dr.
12 Ying made specific findings in each area and then reduced those findings to a residual functional
13 capacity.  Dr. Ying considered Plaintiff's marked limitations in his ability to carry out detailed
14 instructions and limitations on interacting with the public in determining Plaintiff's residual
15 functional capacity.  Dr. Ying's conclusion subsumed findings in each individual area within the
16 residual functional capacity assessment that she set forth.  The ALJ did not reject the findings of
17 Dr. Ying.  See Stubbs-Danielson v. Astrue, 539 F.3d 1169 (9th Cir. 2008) (ALJ's assessment of a
18 claimant adequately captures restrictions where the assessment is consistent with restrictions
19 identified in the medical testimony).

20       The ALJ also gave great weight to Dr. Swanson's findings which included that Plaintiff
21 could relate appropriately to others in a job setting because he had an opportunity to exam
22 Plaintiff and offered his opinion based on the examination signs and findings.  (AR 18-19.)  Dr.
23 Swanson found that Plaintiff:

> is able to maintain concentration and relate appropriately to others in a job setting. He would be able to handle funds in his own best interest.  He is expected to understand, carry out, and remember simple instructions.  He is judged able to respond appropriately to usual work situations, such as attendance, safety, and the like.  Changes in routine would not be very problematic for him.  There do not appear to be substantial restrictions in daily activities.  Difficulties in maintaining social relationships do not appear to be present.

1 (AR 322.) Dr. Swanson did not find Plaintiff limited in his ability to interact with the public.
2 Substantial evidence supports the hypothetical presented to the VE.

3 Further, even assuming the ALJ erred by failing to include a limitation of working with
4 the public, it would be harmless error. The harmless error rule applies in Social Security cases.
5 McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011). The reviewing court can determine from
6 the "circumstances of the case" whether further administrative review is necessary to determine
7 whether there was prejudice from the error." McLeod, 640 F.3d at 888. Mere probability of
8 error is not enough. Id.

9 The Social Security rulings state:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.
>
> . . .
>
> Where there is no exertional impairment, unskilled jobs at all levels of exertion constitute the potential occupational base for persons who can meet the mental demands of unskilled work. These jobs ordinarily involve dealing primarily with objects, rather than with data or people, and they generally provide substantial vocational opportunity for persons with solely mental impairments who retain the capacity to meet the intellectual and emotional demands of such jobs on a sustained basis.

Titles II & Xvi: Capability to Do Other Work-Themedical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments, SSR 85-15, 1985 WL 56857, (S.S.A. 1985).

As the ruling states these unskilled jobs identified by the VE involve dealing primarily with objects, rather than data or people. The ALJ found that Plaintiff was able to work as a hand packager, which is an unskilled job. (AR 20.) Reviewing the DOT descriptions for this and the other jobs identified by the ALJ shows that they do not involve significant interaction with the public. DOT 920.587-018 (Hand Packager);[3] DOT 361.687-018 (Laundry Laborer);[4] DOT

---

[3] Packages materials and products manually, performing any combination of following duties: Cleans packaging containers. Lines and pads crates and assembles cartons. Obtains and sorts product. Wraps protective material around product. Starts, stops, and regulates speed of conveyor. Inserts or pours product into containers or fills containers from spout or chute. Weighs containers and adjusts quantity. Nails, glues, or closes and seals containers. Labels containers, container tags, or products. Sorts bundles or filled containers. Packs special arrangements or selections of product. Inspects materials, products, and containers at each step of packaging process. DOT 920.587-018 1991 WL 687916.

341.683-010 (Golf Range Attendant);[5] DOT 318.687-010 (Kitchen Helper).[6]

Substantial evidence exists that the hypothetical posed to the VE included all of Plaintiff's functional mental limitations. Alternately, to the extent that the hypothetical failed to include a limitation on contact with the public, the jobs identified by ALJ do not require significant contact with the public and such error would be harmless.

**B. Credibility**

Plaintiff argues that the ALJ erred by failing to articulate legally sufficient reasons to reject his testimony. (ECF No. 12 at 10.) Defendant counters that the regulations expressly prohibit granting disability benefits based on a claimant's subjective complaints. (ECF No. 16 at 7.) Defendant contends that the ALJ properly relied on the medical evidence to find that Plaintiff's limitations were not as severe as alleged and the ALJ fulfilled his duty to adequately articulate specific reasons supported by substantial evidence to support his credibility findings. (Id. at 8-9.)

"An ALJ is not required to believe every allegation of disabling pain or other non-

---

[4] Prepares laundry for processing and distributes laundry, performing any combination of following duties: Opens bundles of soiled laundry. Places bundles onto conveyor belt or drops down chute for distribution to marking and classification sections. Weighs laundry on scales and records weight on tickets. Removes bundles from conveyor and distributes to workers, using hand truck. Fastens identification pins or clips onto laundry to facilitate subsequent assembly of customers' orders. Sorts net bags containing clean wash according to customers' identification tags. Sorts empty net bags according to color and size. Collects identification tags from lots of laundered articles for reuse. Moistens clean wash preparatory to ironing. Operates power hoist to load and unload washing machines and extractors. Stacks linen supplies on storage room shelves. Unloads soiled linen from trucks. DOT 361.687-018, 1991 WL 672992

[5] Performs combination of following duties at golf driving range: Picks up golf balls by hand or drives vehicle equipped with trailer that automatically picks up balls as vehicle moves over fairway. Starts revolving tumbler filled with soapy water and immerses golf balls to remove dirt, grass stain, and club marks. Removes and rinses washed balls. Applies liquid cleaner to head and shank of golf clubs and buffs with steel wool. Replaces golf balls and clubs in racks for use by driving range patrons. May perform minor maintenance on benches, using hand tools. DOT 341.683-010, 1991 WL 672839.

[6] Performs any combination of following duties to maintain kitchen work areas and restaurant equipment and utensils in clean and orderly condition: Sweeps and mops floors. Washes worktables, walls, refrigerators, and meat blocks. Segregates and removes trash and garbage and places it in designated containers. Steam-cleans or hoses-out garbage cans. Sorts bottles, and breaks disposable ones in bottle-crushing machine. Washes pots, pans, and trays by hand. Scrapes food from dirty dishes and washes them by hand or places them in racks or on conveyor to dishwashing machine. Polishes silver, using burnishing-machine tumbler, chemical dip, buffing wheel, and hand cloth. Holds inverted glasses over revolving brushes to clean inside surfaces. Transfers supplies and equipment between storage and work areas by hand or by use of hand truck. Sets up banquet tables. Washes and peels vegetables, using knife or peeling machine. Loads or unloads trucks picking up or delivering supplies and food. DOT 318.687-010, 1991 WL 672755.

9

exertional impairment." Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation and citations omitted). Determining whether a claimant's testimony regarding subjective pain or symptoms is credible requires the ALJ to engage in a two-step analysis. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). This does not require the claimant to show that her impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. Smolen, 80 F.3d at 1282.

Second, if the first test is met and there is no evidence of malingering, the ALJ can only reject the claimant's testimony regarding the severity of her symptoms by offering "clear and convincing reasons" for the adverse credibility finding. Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1160 (9th Cir. 2008). The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal punctuation and citations omitted).

1. ALJ Findings

The ALJ found that Plaintiff "testified, and understandably may honestly believe, that his impairments are disabling." (AR 18.) However, the ALJ "must accurately determine the degree of his impairments based upon the totality of the other evidence in the record." (AR 18.) The ALJ found that the medical evidence is not consistent with Plaintiff's complaints and the medical findings do not support the existence of limitations greater than those included in his residual functional capacity. (AR 17-18.) In 2009, although Plaintiff had diabetes since 2004 he was not taking any prescribed medication. He was taking herbs and over-the-counter medications. (AR 18.) Plaintiff began taking insulin and his HBA1c was 10.4 in June 2009. (AR 18.) In January 2011, Plaintiff complained of pain and paresthesia in both feet, but his examination was within

normal limits. (AR 18.)

Plaintiff was examined by Dr. Swanson in February 2011 who noted that Plaintiff's attitude was cooperative, but not engaging. (AR 18.) Dr. Swanson found Plaintiff reluctant to provide much background information and that his effort was not optimal resulting in a low estimate of Plaintiff's intelligence. (AR 18.)

The ALJ also found that Plaintiff's daily activities are inconsistent with his complaints of disabling symptoms, limitations, and social functioning. (AR 19.) Based upon the entire record and Plaintiff's testimony, the evidence does not support Plaintiff's allegations of total disability. (AR 19.) Treatment notes do not sustain the allegations of disabling pain and limitations and the consultative examinations support the residual functional capacity. (AR 19.)

2. <u>The ALJ provided clear and convincing reasons to find Plaintiff's allegations of disabling symptoms not credible</u>

**a.     Daily Activities**

Plaintiff stated that he would be able to work if it were not for the pain in his feet. (AR 40.) The ALJ considered that Plaintiff prepares his meals each day, mows the yard, drives, rides a bicycle or walks each day, uses public transportation, and goes shopping once a week, (AR 42, 183, 184, 191, 192.) Plaintiff washes dishes, vacuums, and sweeps. (AR 43.) Plaintiff can walk for 45 minutes and be on his feet for about an hour before he starts to feel pain. (AR 43.)

The ALJ may properly consider that a claimant's daily activities are inconsistent with his complaints of disabling pain. While Plaintiff contends that he is disabled due to his foot pain, he is able to take walks, ride a bike, perform household chores, mow the lawn and go shopping. The ALJ properly considered that Plaintiff's complaints of disabling foot pain were inconsistent with his daily activities. <u>Fair</u>, 885 F.2d at 603.

**b.     Medical Record**

The ALJ also found Plaintiff's treatment notes do not sustain the allegations of disabling pain and limitations.

i.     <u>Foot pain</u>

At the hearing Plaintiff testified that he has told his doctors about his foot pain, but they

1 tell him his feet are alright. (AR 41.) The record only demonstrates fleeting references to foot
2 pain. When Plaintiff was seen on July 8, 2009, the record notes there was no tingling or sensory
3 loss in the extremities. (AR 293.) On September 23, 2009, Plaintiff reported some numbness
4 and tingling in his feet, but no pain or other complaints. (AR 297.) On March 10, 2010, Plaintiff
5 complained of foot pain, reporting that he was flat footed and needed orthotics. Examination of
6 the extremities was negative. (AR 299.)

7 Plaintiff was examined by Dr. Damaina on January 21, 2011. Plaintiff complained of
8 headaches, pain and paresthesia in the right arm and paresthesia in both feet and the left groin.
9 (AR 311.) Plaintiff's examination revealed no abnormalities and Dr. Damaina opined that
10 Plaintiff can sit, stand, and walk without restriction, requires no assistance with ambulation, can
11 lift and carry 50 pounds occasionally and 20 pounds frequently with no postural or manipulative
12 limitations. (AR 315.)

13 On April 2, 2012, chart notes indicate that Plaintiff had decreased sensation to his feet
14 that is not clinically significant and that Plaintiff has had diabetic neuropathy since September
15 20, 2010. (AR 354.)

16 While Plaintiff complained of disabling foot pain, the record shows that Plaintiff
17 complained of foot pain on two occasions and examination results were negative or revealed no
18 abnormalities. (AR 299, 315.) The most recent chart notes state that Plaintiff has decreased
19 sensation to his feet that is not clinically significant. (AR 354.) The ALJ properly considered
20 that the medical record did not demonstrate the severity of the pain that Plaintiff alleged caused
21 his inability to work.

22     ii.    <u>Mental impairments</u>

23 Dr. Swanson examined Plaintiff on February 10, 2011 and noted that Plaintiff was
24 reluctant to provide much background information. (AR 319.) Plaintiff ambulated
25 independently to the testing session unaccompanied and nothing atypical was observed in his
26 gait or postural presentation. (AR 319.) Test results indicated that plaintiff can be expected to
27 perform academically at a level considerably lower than same-aged peers, but Dr. Swanson
28 noted that Plaintiff's effort was non-optimal and this can be seen as a low estimate of his

intelligence. (AR 321.)  Mental and emotional functioning were opined to be within normal limits. (AR 322.)

The ALJ can properly consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ properly considered that Dr. Swanson found Plaintiff to give less than optimal effort during his testing which resulted in a low estimate of his intelligence.

The ALJ provided "clear and convincing reasons" for the adverse credibility finding.

## V.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ did not err in the hypothetical presented to the VE regarding Plaintiff's residual functional capacity or in finding Plaintiff's allegations of pain and limitations were not as disabling as Plaintiff claimed.  Accordingly,

IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff James Walker.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **December 24, 2014**

UNITED STATES MAGISTRATE JUDGE

13